# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

REGINA T. DREXLER,

Plaintiff,

v.

UNIVERSITY OF COLORADO DENVER;
NELIA VIVEIROS, Title IX Coordinator in her Official and Individual Capacities;
EKATERINA VLAHOS, Department Chair, Architecture, in her Official and Individual Capacities;
MATTHEW SHEA, Admissions Chair, Architecture, in his Official and Individual Capacities;
ERIC SOMMERFELD, Admissions Chair, Architecture, in his Official and Individual Capacities;
KRISTIN KUSHMIDER, Director of Case Management, in her Official and Individual Capacities; and
CHRISTOPHER PUCKETT, University Counsel, in his Official and Individual Capacities

Defendants.

---

## COMPLAINT AND JURY DEMAND

*This cause of action arises from Defendants deliberately indifferent response to repeated complaints by Plaintiff of discrimination, hostile environment, harassment and retaliation. Defendant's failure to promptly and appropriately investigate and respond to the complaints subjected Plaintiff to further discrimination, hostile environment, harassment and retaliation. Defendants improperly destroyed relevant evidence despite Plaintiff's repeated complaints. Defendants unlawfully disclosed educational records and other private information. Defendants breached contractual obligations owed to Plaintiff related to discrimination, harassment and retaliation. Defendants actions effectively denied Plaintiff access to educational opportunities. Defendants further denied Plaintiff equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution.*

Plaintiff Regina T. Drexler ("Ms. Drexler") hereby makes the following complaint against Defendants:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which allows jurisdiction in this court over a civil action arising under the Constitution, laws and treaties of the United States.

2.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

3.      This court also has subject matter jurisdiction over the pendent state law asserted by Plaintiff because they are so related to claims over which this Court has original jurisdiction that they form part of the same case or controversy pursuant to 28 U.S.C. 1367.

4.      Plaintiff brings this action to redress unlawful discrimination, a hostile educational environment and retaliation pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein.

5.      Plaintiff brings this action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. 1983.

6.      Plaintiff brings this action for injunction to prevent the further unlawful disclosure, under 20 U.S. C. 1232(g) and otherwise, of confidential educational records and other information concerning Plaintiff.

7.      Plaintiff brings this action for injunctive relief requiring training of Responsible Employees, University Counsel and the Defendant University of Colorado's Denver ("UCD") Title IX Office and adequate staffing and procedural guidance and compliance related to Title IX Complaints and prompt, impartial and fair investigation thereof.

8.      Plaintiff brings this action to redress the breach of contractual obligations requiring non-discrimination and conflict of interest compliance and prompt, impartial and fair investigation and compliance with explicit procedures related thereto and for the breach of other agreements as set forth herein, as well as intentional interference with contractual relations, invasion of privacy, intentional infliction of emotional distress, and unlawful spoliation of evidence.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because upon information and belief, all Defendants reside or resided in this district and/or the events giving rise to the claims occurred in this district.

**PARTIES**

10.      At all material times Plaintiff was a resident of Denver County, State of Colorado.

11.      At all material times, Plaintiff was an applicant or student attending Defendant University of Colorado's Denver ("UCD").

12.      UCD is a public educational institution located in Denver County, State of Colorado with an address of 1201 Larimer Street, Denver, Colorado 80202.

13.      At all material times, Defendant Nelia Viveiros ("the Title IX Coordinator"), in her official and individual capacities, worked within Denver County, State of Colorado and was an

agent and/or employee of UCD, acting or failing to act within the scope, course and authority of UCD.

14.    At all material times, Defendant Ekaterina Vahlos ("the Department Chair") Coordinator"), in her official and individual capacities, worked within Denver County, State of Colorado and was an agent and/or employee of UCD, acting or failing to act within the scope, course and authority of UCD.

15.    At all material times, Defendant Eric Sommerfeld ("First Admissions Chair"), in his official and individual capacities, worked within the Denver County, State of Colorado and was an agent and/or employee of UCD, acting or failing to act within the scope, course and authority of UCD.

16.    At all material times, Defendant Matthew Shea ("Second Admissions Chair"), in his official and individual capacities, worked within the Denver County, State of Colorado and was an agent and/or employee of UCD, acting or failing to act within the scope, course and authority of UCD.

17.    At all material times, Defendant Kristin Kushmider ("Director of Case Management") in her official and individual capacities, worked within the Denver County, State of Colorado and was an agent and/or employee of UCD, acting or failing to act within the scope, course and authority of UCD.

18.    At all material times, Defendant Christopher Puckett ("University Counsel") in his official and individual capacities, worked within the Denver County, State of Colorado and was an agent and/or employee of UCD, acting or failing to act within the scope, course and authority of UCD.

19.    At all material times, the subject of Plaintiff's repeated complaints to UCD and its

Responsible Employees, Rachel L. Brown ("Faculty Member"), in her official and individual capacities, worked within the Denver County, State of Colorado and was an agent and/or employee of UCD, and in such capacities, she impaired and interfered with Plaintiff's educational environment, opportunities and relationships, and undertook actions with respect to Plaintiff, including but not limited to directly or indirectly causing the denial of Plaintiff's applications to the Program in 2012 and 2013 and unlawful monitoring and surveillance of Plaintiff.

## APPLICABLE LAW AND POLICIES

20.     Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. 1681(a) states:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . .

19.     Title IX is implemented through the Code of Federal Regulations.  See 34 C.F.R. Part 106. 34 C.F.R. § 106.8(b) provides:

. . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

20.     In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent."

21.     The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.

22.     Pursuant to F.E.R.P.A, 20 U.S. C. 1232(g) and otherwise, the disclosure of student educational records and other confidential student information is prohibited.

23.     UCD adopted APS 5014, Sexual Misconduct Policy (reference herein to include any predecessor policy), prohibiting discrimination based on gender and sexual orientation, harassment (including hostile environment) and retaliation, which requires all "Responsible Employees" to report any "possible sexual misconduct" and establishing certain procedures required to be undertaken and followed in connection with any report of sexual misconduct and investigation thereof, as set forth therein.

24.     UCD adopted a Title IX Report process policy (reference herein to include any predecessor policy) which required certain procedures be followed related to a claimed violation of Title IX, and included assurances of a "prompt, fair and impartial process from the initial investigation to the final outcome" and that parties have the right to present relevant information to the Title IX Coordinator and Investigator.

25.     UCD adopted APS 5015, Conflict of Interest in Cases of Amorous Relationships Policy (reference herein to include any predecessor policy), establishing certain procedures required to be undertaken in the case of prior amorous relationships between faculty and students, as set forth therein.

26.     UCD adopted Article 10 (reference herein to include any predecessor policy), Nondiscrimination, prohibiting discrimination on the basis of sex, sexual orientation, age, and other protected class status, in admission and access to, and treatment in its educational programs and activities, as set forth therein.

27.     Article 10 further provides that all students have the fundamental right to equal respect, due process and judgment.

**FACTUAL ALLEGATIONS**

28.     At all material times, UCD was receiving federal funding, as contemplated by Title

IX, 20 U.S.C. § 1681, *et seq.*

29.   Plaintiff was an applicant to UCD's Masters of Architecture Program (the "Program"), for admission in Fall 2012 and Fall 2013, but was denied admission despite the fact that she was a well-qualified applicant and had been assured admission by the then admissions chair of the Program.

30.   Plaintiff exceeded the objective admission criteria for applicants to the Program for her 2012 and 2013 applications, including a 3.8 GPA, which was substantially higher than most students admitted to the Program, and Plaintiff had an above-average number and quality of recommendation letters.

31.   In January 2012, Plaintiff was assured by the First Admissions Chair that her portfolio, the only subjective criteria considered for admission, was sufficient for admission and that she would be admitted to the Program based thereon.

32.   UCD had an unusually low number of applicants during the two years Plaintiff applied for admission to the Program in 2012 and 2013, and upon information and belief, Plaintiff was the only well-qualified applicant denied admission to the Program during those years.

33.   Each time she was denied admission, Plaintiff specifically and repeatedly raised the concern that the Faculty Member had been improperly and adversely involved in the denial of her applications, directly or indirectly, related to the parties' past sexual/amorous relationship, the termination thereof and in retaliation with respect thereto, including repeatedly providing written notice to UCD Responsible Employees, including the First and Second Admissions Chairs.

34.   In 2013, Plaintiff raised the issue to the former Dean of the University of Colorado Law School (Boulder), Dr. Marianne Wesson. Dr. Wesson intervened on behalf of Plaintiff and raised the specific issue and concern about Respondent's improper involvement in the denial of

Plaintiff's applications to the Program to the UCD Vice Chancellor of Academic Affairs, Laura Goodwin, also a "Responsible Employee."

35.     Upon information and belief, State Senator Pat Steadman also intervened on behalf of Plaintiff and raised the specific issue and concern about Respondent's improper involvement in the denial of Plaintiff's admission to other UCD Responsible Employees.

36.     After being twice denied admission to the Program, in Fall 2014, Plaintiff began related undergraduate coursework at the recommendation of the Dean of the Program and other faculty members, who separately advised Plaintiff that her denial of admission "must have been a mistake" because "everyone gets in" and that she was "probably the most qualified applicant" to the Program.

37.     In connection with her applications to the Program, and both prior to and after Plaintiff started coursework in the undergraduate program, upon information and belief, the Faculty Member intentionally disparaged her to UCD faculty and employees (including the Department Chair and Admissions Chair), with known false allegations, causing denials of Plaintiff's 2012 and 2013 Program applications and causing other damage and harm to Plaintiff in her capacities as applicant and student at UCD, causing her to be denied educational opportunities.

38.     Upon starting undergraduate coursework in Fall 2014, Plaintiff again raised the same concerns, including in writing, about the Faculty Member disparaging her and the adverse effect thereof on her prior Program applications and in connection with her educational environment and relationships to the Department Chair, another "Responsible Employee."

39.     The Department Chair and/or other UCD employees raised the issue of Plaintiff's expressed concerns and provided Plaintiff's written complaint thereof to Director of Case Management, another "Responsible Employee" supervising the Case Management Office.

40.     The Case Management Office is charged with "promoting academic and personal success by empowering and encouraging students."

41.     In September 2014, the Director of Case Management instructed the Department Chair via email message to "ignore" Plaintiff's detailed complaints concerning the Faculty Member.

42.     In an October 2014 meeting, Plaintiff repeated the same concerns to the Department Chair about the Faculty Member and the adverse effect thereof on her prior Program applications and in her educational environment and requested that the Faculty Member be prevented from direct or indirect involvement in her subsequent Program application.

43.     In the October 2014 meeting, Plaintiff requested guidance from the Department Chair related to student activities and courses as the same may relate to the Faculty Member. The Department Chair advised and agreed and committed to ensure that Plaintiff was permitted to participate in any student activity or class, had no reason to be concerned about doing so, that no adverse action would be taken against Plaintiff for doing so, and that the Faculty Member would not be permitted to interfere with her educational opportunities.

44.     Despite this assurance and agreement and a specific invitation to attend a student activity which the Faculty Member was supervising and which was then scheduled, Plaintiff elected to withdraw therefrom and did not to attend, causing Plaintiff to be denied access to educational opportunities.

45.     The Admissions Chair, the Department Chair, and other UCD employees notified University Counsel, also a "Responsible Employee," of Plaintiff's repeated expressed concerns about the Faculty Member, from 2012 through 2015.

46.     Despite Plaintiff's repeated reports, including reports in writing and during in-

person meetings, neither UCD nor any of the notified "Responsible Employees," including the Admission Chairs, the Department Chair, the Director of Case Management, the Vice Chancellor of Academic Affairs, and University Counsel, complied with Title IX requirements or their obligations under APS 5014, APS 5015 or Article 10 or otherwise.

47.     Upon information and belief, UCD, University Counsel, Second Admissions Chair and/or other UCD named defendants disclosed Plaintiff's educational records and other confidential student information to the Faculty Member and otherwise, in violation of F.E.R.P.A, 20 U.S. C. 1232(g), and other applicable law, starting as early as 2012 and continuing thereafter, invading Plaintiff's privacy with respect thereto and thereby permitting Faculty Member to unlawfully monitor and surveil Plaintiff.

48.     In connection with meetings with her admissions counselors and the Admissions Chair, and based on guidance from the same, received both prior and subsequent thereto, and in light of the assurance and agreement as communicated by the Department Chair, Plaintiff registered for several undergraduate classes for the summer and fall of 2015, including a Design Thinking Course ("DT Course").

49.     There was no designated instructor assigned to teach the DT Course for the fall of 2015 when Plaintiff enrolled therein.

50.     The Faculty Member subsequently accepted a teaching assignment to teach the DT Course in which Plaintiff was enrolled.

51.     At no time did the Faculty Member comply with, nor did UCD provide adequate training or supervision with respect to, the disclosure and other requirements related to the parties' past amorous/sexual relationship, related to the October 2014 student activity, the DT Course, the Faculty Member's direct or indirect involvement in the denials of admission into the Program, and

the disparagement of Plaintiff to the Admissions Chair or otherwise.

52.     Plaintiff was finally admitted to the Program in April 2015 on her third attempt and accepted admission.

53.     University Counsel advised the Faculty Member in June 2015 that Plaintiff was admitted to the Program for fall 2015 and that this would mean that Plaintiff may cease to be enrolled in the DT Course; University Counsel nevertheless invited the Faculty Member to file a Title IX claim against Plaintiff related to Plaintiff's enrollment in the DT Course and introduced the Faculty Member to the Title IX Coordinator for this purpose.

54.     Neither University Counsel nor any other UCD Responsible Employee ever made a referral to Plaintiff to the Title IX Coordinator or referred Plaintiff's repeated prior complaints to the Title IX Office as required.

55.     Immediately thereafter, the Faculty Member filed an "anonymous" Title IX complaint against Plaintiff which included allegations related to (i) the October 2014 student event (that Plaintiff did not attend); and (ii) Plaintiff's enrollment in the DT Course which she alleged "is being offered by [the Faculty Member] during the Fall 2015," asserting that Plaintiff's actions related thereto were "impeding" the Faculty Member's ability to conduct "her work responsibilities."

56.     Despite the APS 5014 policy envisioning a determination to as to whether the Faculty Member's Title IX complaint, even if true, would constitute a violation of UCD policy, no such determination was made, and UCD instead immediately issued a Notice of Investigation against Plaintiff and imposed a no contact directive against Plaintiff.

57.     Upon receiving the Notice of Investigation (and the related website links to UCD's policies), and becoming aware of UCD's Title IX policy, APS 5014, and the application thereof to

her prior complaints, as well as the application of the Title Report Process, APS 5015 and Article 10 to her prior complaints, Plaintiff filed a formal Title IX complaint, which included her prior assertions related to the parties' past sexual relationship, the Faculty Member's alleged interference and disparagement, harassment and retaliation related thereto and other improper conduct and a stalking allegation, and Plaintiff included copies of her prior written complaints made to Responsible Employees from 2012-2015.

58.     Upon receipt of Plaintiff's Title IX Complaint, the UCD Title IX Coordinator rescinded the Notice of Investigation issued against Plaintiff and conducted a preliminary review of both Plaintiff's and the Faculty Member's complaints.

59.     The Title IX Coordinator thereafter continued the "no contact directive" against Plaintiff and imposed a "no contact directive" on  Faculty Member as interim measures pending the outcome, as permitted by the policy (UCD may take "interim measures before the final outcome").

60.     The Title IX Coordinator thereafter scheduled meetings with Plaintiff and the Faculty Member, ostensibly to determine whether the parties' complaints, if true, would constitute a violation under Title IX and APS 5014 and thus merited investigation.

61.     Upon review of the Faculty Member's complaint and interview of the Faculty Member, and review of documents and evidence presented by the Faculty Member against Plaintiff, the Faculty Member's complaint was dismissed by written notice on August 11, 2015.

62.     Upon review of Plaintiff's complaint and interview of Plaintiff by a Title IX Investigator employed by UCD, but without conducting a review of documents and evidence despite Plaintiff's offer to provide the same and without performing an investigation related to the denial of Plaintiff's prior applications for admission to the Program as requested by Plaintiff,

Plaintiff's complaint against the Faculty Member was also dismissed by written notice on August 11, 2015.

63.     Thereafter, despite the dismissal of the complaint against her, the Title IX Coordinator continued the imposition of the interim measure of the "no contact directive" on Plaintiff, in violation of Title IX and UCD Policy.

64.     Plaintiff objected to any continuing directive given the dismissal of the Faculty Member's complaint, and Plaintiff immediately made a request to the Title IX Coordinator that such directive be removed in light of the final outcome dismissing the Faculty Member's complaint.

65.     The "no contact directive" was thereafter modified to a "no communication directive," requiring that Plaintiff refrain from communicating with the Faculty Member, which Plaintiff had not done in the more than 6 years prior; Plaintiff was assured that the no contact directive against the Faculty Member continued.

66.     Plaintiff immediately requested an investigation be conducted related to the dismissal of her complaints, after a review which had not been prompt, adequate, fair or impartial, and was concluded without permitting Plaintiff to provide documentation and evidence and without adequate or fair investigation of her prior rejected applications or review of documents and witnesses offered by her or otherwise available and without proper investigation of the Faculty Member's direct or indirect involvement therewith and in violation of APS 5015 and the Title IX Report Process.

67.     The UCD Title IX Office thereafter re-opened review of Plaintiff's Title IX Complaint against the Faculty Member in September 2015, but did not issue a Notice of Investigation or conduct an investigation of Plaintiff's allegations as required.

68.     The re-opened review concluded with a dismissal of Plaintiff's complaints on November 20, 2015, and findings (i) that the Faculty Member was not involved in the process of reviewing Plaintiff's application and did not become aware that Plaintiff had applied "until the decision to deny [the] application had been made; (ii) that UCD officials did not fail to discharge their duty to report and that they complied with notification requirements (despite no Responsible Employee reporting Plaintiffs Title IX complaints made repeatedly by Plaintiff to Responsible Employees from 2012-2015); and (iii) that there was no violation of APS 5015, Conflict of Interest in Cases of Amorous Relationships, because the Faculty Member had not been in a "direct evaluative relationship" with Plaintiff (despite that Faculty Member was the assigned instructor to the DT Course until she was re-assigned, that she supervised the student activity in October 2014 in which Plaintiff was enrolled (and then dis-enrolled therefrom); and that she admitted to discussing her allegations against Ms. Drexler with the Second Admissions Chair).

69.     In connection with the re-opened review, Plaintiff was not permitted to participate therein, and Plaintiff was not provided access or information related to the witnesses or documents reviewed in the context thereof.

70.     In connection with the dismissal of Plaintiff's Complaint, UCD and the Title IX Coordinator did not advise Plaintiff of the right to appeal the determinations, indicating instead that the "matters were not open for further discussion," in violation of Title IX, APS 5014 and the Title IX Report Process.

71.     Upon information and belief, in the context of the re-opened review, the Title IX Coordinator improperly colluded with UCD Faculty, including the Department Chair, and University Counsel regarding the review of Plaintiff's Title IX Complaint and response thereto and otherwise.

72.     Neither the initial review or the re-opened review was conducted in a prompt, adequate fair or impartial manner as required, and was conducted by UCD-directed employees who were institutionally biased.

73.     UCD failed to eliminate the discrimination, harassment and retaliation about with Plaintiff repeatedly complained, failed to take appropriate measures to address Plaintiff's Title IX Complaint and the effects of the conduct underlying the allegations and failed to take appropriate measures to prevent reoccurrence thereof.

74.     In August 2015, UCD assigned and the Faculty Member accepted a new teaching assignment in the Program in August 2015 which would have required that Plaintiff share a classroom with her for 10 hours a week in a required first year Program class, causing Plaintiff to defer her long-sought admission to the Program, and UCD failed to eliminate the harassment, appropriately address the effects thereof or prevent its reoccurrence, thus effectively again denying her access to educational opportunities.

75.     During the pendency of the review of Plaintiff's complaint against the Faculty Member, and despite the continuing "no contact directive" against her, UCD promoted the Faculty Member, increasing her stature/job title, job responsibilities and compensation.

76.     The new course assignment in August 2015 and another incident where the Faculty Member's car was following hers (about which Plaintiff had repeatedly complained) caused Plaintiff to seek a temporary protection order based on Domestic Abuse (harassment) arising from the parties' past sexual relationship and the Faculty Member's impairment and interference in educational contexts as permitted by C.R.S. 13-14-105(1)(f) and Stalking pursuant to C.R.S. 18-3-602 and in violation of the no contact directive.

77.     The temporary protection order requested by Plaintiff against the Faculty Member

in September 2014 was granted: "Your case, definitely the evidence supports especially domestic abuse.  And so, the Court is concerned."

78.     Thereafter, in September 2015, the Faculty Member sought a temporary protection order against Plaintiff based on a new allegation of "Stalking pursuant to C.R.S. 18-3-602." In her Verified Complaint in support of her request for a temporary protection order, and in statements of counsel at the *ex parte* hearing, the Faculty Member made known false representations to the court, including that her Title IX complaint against Plaintiff was "in the process of being addressed" despite the fact that it had been dismissed for insufficient cause more than a month earlier.

79.     The Faculty Member also misrepresented to the court at the *ex parte* hearing that she did not have a sexual relationship with Plaintiff, and only admitted this weeks later.

80.     Based on the foregoing misrepresentations by the Faculty Member, the county court granted the Faculty Member's request for temporary protection order (addressing Respondent at the *ex parte* hearing): "I don't need to take any testimony today;" "I will say that you have a very good attorney. She has a lot of credibility with this Court and, and I'm sure all the courts in, in Denver. And I feel it appropriate to at this time to issue a Temporary Protection Order based on the statements that have been made by counsel."[1]

81.     Despite repeated notices of Plaintiff's allegations from 2012-2015, UCD destroyed

---

[1] See Rules of Judicial Conduct, Rules 3.3 (prohibiting vouching for any person in a legal proceeding), 2.2 and 2.3 (prohibited bias, including related to counsel), and 97 (requiring recusal for bias or appearance of bias); *see also Annotated Model Code of Judicial Conduct*, p.384-5 (prohibition against vouching for "a person in a legal proceeding" under Rule 3.3 includes lawyers and is not limited to litigating parties); p.93 (a judge may recommend an attorney *as long as the judge does not sit on the case*); p.305 (judge's bias towards party's counsel properly imputed to party; judge's favorable treatment or friendliness toward lawyer considered bias under Rule 2.11 (A)(1)), p.247 (an appearance of partiality tips the balance in favor of recusal); p.196 (recusal required where "impartiality might reasonably be questioned")

records related to Plaintiff's applications and denials thereof and the Faculty Member's direct or indirect involvement therein. This destruction requires an adverse evidentiary presumption against UCD. *See Aloi v. Union Pacific Railroad Corp.*, 129 P.3d 999 (2006) (Colorado recognizes adverse inference related to spoliation serves punitive and remedial functions to deter the destruction of evidence); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 620 (D. Colo. 2007) (the obligation to preserve evidence arises when a party should have known that the evidence may be relevant to future litigation).

82.    At the hearing, the Title IX Coordinator and Department Chair appeared and gave, and upon information and belief colluded to give, false and/or substantially misleading testimony for the benefit of Faculty Member, to the detriment of Plaintiff.

83.    The failure of UCD to promptly, fairly and impartially investigate Plaintiff's claims and failures to eliminate the complained of conduct, address its effects and prevent its re-occurrence, and the spoliation of relevant evidence, the presentation of false and/or misleading hearing testimony by UCD witnesses, including the Department Chair and Title IX Coordinator, and Plaintiff's reliance on and compliance with the directives by UCD and the Department Chair, caused Plaintiff substantial economic and non-economic damages and caused Plaintiff to be effectively denied educational opportunities.

84.    UCD witnesses were not aware of the applicable UCD Polices, nor the requirements thereof, nor did they act in accordance therewith.

85.    UCD is responsible for ensuring that all its employees are properly trained and supervised with respect to compliance with Title IX, UCD policies, and to perform their jobs, but UCD failed to adequately train or supervise its employees in this regard.

86.    Although Plaintiff raised the issue of possible sexual misconduct, harassment, and

retaliation to numerous Responsible Employee and numerous Responsible Employees were made aware of it, including to the Department Chair, the Admissions Chairs and the Director of Case Management, and the Vice Chancellor of Academic Affairs and University Counsel, all such Responsible Employees failed to report as required under Title IX, and APS5014, from 2012-2015.

87.     UCD, the Title IX Coordinator and Responsible Employees also failed and refused to otherwise comply with the requirements of Title IX, APS5014, and the Title IX Report Process.

88.     UCD and the Title IX Coordinator failed and refused to comply with the procedural requirements of Title IX, APS5014, and the Title IX Report Process related to review, investigation and interim remedial measures.

89.     UCD, the Title IX Coordinator and the Department Chair failed and refused to comply with APS5015 with regard to the requirements related to the previous amorous/sexual relationship between Plaintiff and the Faculty Member.

90.     Upon information and believe, at all times relevant hereto, UCD failed to properly staff, supervise and train its Title IX Office.

91.     Upon information and belief, at all times relevant hereto, UCD's Title IX Office was inadequately staffed, with one part-time Title IX Coordinator, who was required to serve multiple campuses at different geographic locations and charged with Title IX policy implementation, compliance, reviews and investigations, and who was also a graduate student.

92.     UCD took and omitted to take actions that that resulted in the deprivation of Plaintiff's constitutional, statutory, and common-law rights and UCD breached its contractual obligations under APS 5014, Title IX Report Process, APS 5015, and Article 10.

93.     UCD is responsible for the acts and omissions of its  employees and agents.

## COUNT I
## VIOLATION OF TITLE IX

94.     Paragraphs 1 through 93 are incorporated by reference as if stated in full herein.

95.     The discrimination, harassment and retaliation set forth in the Plaintiff's Factual Allegations was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities and benefits.

96.     UCD and the other Defendants created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"),  because

      a)   Plaintiff was a member of a protected class as a result of her sex, age and sexual orientation or perception thereof;

      b)   Plaintiff was subjected to discrimination, harassment and retaliation related to her status as a member of a protected class; and

      c)   Plaintiff was subjected to a hostile educational environment created by UCD's failure of training of its employees and its and their failures of compliance with policies and procedures and failure to adequately and impartially investigate, address and eliminate the harassment and adopt adequate measures to address the effects and prevent the re-occurrence thereof.

97.     UCD and the other Defendants had actual knowledge of the discrimination, harassment and retaliation suffered by Plaintiff and were deliberately indifferent thereto and to the substantial harmful effects arising therefrom.

98.     UCD and the other Defendants failed and refused to properly investigate Plaintiff's claims consistent with the requirements of Title IX, APS 5014 and the Title IX Report Process and were deliberately indifferent with respect to the discrimination, harassment and retaliation and

other harmful effects suffered by Plaintiff as a result thereof.

99.     The actions and omissions by UCD and the other named Defendants caused Plaintiff, on the basis of her status as a member of a protected class related to sex, age, and sexual orientation or perception thereof, to be excluded from participation in, denied the benefits of, and subjected to discrimination, harassment and retaliation in UCD's educational program in violation of Title IX.

100.     Defendant University failed to promptly investigate and take immediate effective remedial steps to resolve and address Plaintiff's complaints as required by Title IX, APS 5014 and the Title IX Report Process.

101.     UCD failed to implement and properly train and supervise its Responsible Employees with regard to Title IX and UCD Policies and failed to adequately staff, train and supervise its Title IX Office. *See also* 20  U.S.C. 1092 (Clery Act).

102.     Plaintiff suffered economic and non-economic damages, in the form of emotional distress and psychological damages, and her character and standing in her community suffered, as a direct and proximate cause of UCD's and the other Defendants' deliberate indifference to her rights under Title IX, APS 5014 and Title IX Report Process.

**COUNT II**
**42 U.S.C. § 1983**

103.     Paragraphs 1 through 102 are hereby incorporated by reference as if set forth in full herein.

104.     Under the Fourteenth Amendment of the U.S. Constitution, Plaintiff had the right to Equal Protection of Laws and Due Process protections.

105.     UCD and the other Defendants were all state actors acting under the color of state law.

106.     UCD subjected Plaintiff to violations of her right to Equal Protection of Laws and Due Process by failing to adequately train and supervise the other named Defendants with respect to Plaintiff's complaints.

107.     UCD and the other named Defendants subjected Plaintiff to violations of her right to Equal Protection and Due Process by failing to adequately and impartially investigate and respond as required to Plaintiff's repeated complaints of discrimination, harassment and retaliation, and the failure and refusal to investigate Plaintiff's complaints and take appropriate remedial action with respect thereto.

108.     UCD subjected Plaintiff to violations of her right to Equal Protection and Due Process by failing to adequately staff, train and supervise its Title IX Office and its Responsible Employees and in imposing a no contact directive after final outcome and dismissal of the Title IX Complaint against her.

109.     Plaintiff has suffered economic and non-economic damages, including emotional distress and psychological damage, and her character and standing in her community have suffered as a direct and proximate cause of UCD's and the other Defendants' deliberate indifference to her rights under the Fourteenth Amendment.

110.     An injunction is required to prevent UCD from further breaching its obligations under Title IX.

## COUNT III
## BREACH OF CONTRACT

111.     UCD breached its obligations owed to Plaintiff as an applicant and student with respect to its contractual obligations owed to her under APS5014, Title IX Report Process, APS5015 and Article 10.

112.     UCD and Department Chair breached their contractual obligations to Plaintiff with

respect to their assurances, agreement and commitment to ensure that Plaintiff was permitted to participate in any student activity or class without interference by Faculty Member or adverse repercussion.

113.    As a direct and proximate cause thereof, Plaintiff suffered economic and non-economic damages, including emotional distress and psychological damage, and her character and standing in her community have suffered as a direct and proximate cause of UCD's breach thereof.

## COUNT IV
## INTENTIONAL INTERFERENCE WITH CONTRACT

114.    Paragraphs 1 through 113 are hereby incorporated by reference as if set forth in full herein.

115.    There were valid contracts existing between Plaintiff and UCD and the Department Chair.

116.    The individual Defendants, including the First Admissions Chair, the Second Admissions Chair, the Title IX Coordinator, the Department Chair, University Counsel and Faculty Member had knowledge of the contracts.

117.    UCD and the Department Chair breached the contracts.

118.    The individual named Defendants' wrongful and improper action induced UCD and the Department Chair to breach the contracts.

119.    As a direct and proximate cause thereof, Plaintiff suffered economic and non-economic damages, including emotional distress and psychological damage, and her character and standing in her community have suffered.

## COUNT V
## INVASION OF PRIVACY

120.    Paragraphs 1 through 119 are hereby incorporated by reference as if set forth in full

herein.

121.     UCD, University Counsel, the Title IX Coordinator, and Second Admissions Chair, and upon information and belief other individual Defendants, invaded Plaintiff's privacy by unlawfully disclosing Plaintiff's educational records and other confidential information in violation of the requirements of F.E.R.P.A and under common law, breaching a duty owned to Plaintiff.

122.     As a direct and proximate cause thereof, Plaintiff suffered economic and non-economic damages, emotional distress and psychological damage, and her character and standing in her community have suffered, and an injunction is required to prevent further unlawful disclosures of the same.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

123.     Paragraphs 1 through 122 are hereby incorporated by reference as if set forth in full herein.

124.     UCD and the other individual Defendants engaged in extreme and outrageous conduct with respect to Plaintiff.

125.     UCD and the other individual Defendants engaged in such conduct recklessly or with the intent to cause Plaintiff severe emotional distress.

126.     As a direct and proximate cause thereof, Plaintiff suffered severe emotional distress, economic and non-economic damages, and psychological damage, and her character and standing in her community have suffered.

## COUNT VII
## UNLAWFUL DESTRUCTION OF EVIDENCE (THIRD PARTY)

127.     Paragraphs 1 through 126 are hereby incorporated by reference as if set forth in full

herein.

128.    UCD and other individual Defendants unlawfully destroyed or authorized the unlawful destruction of evidence relevant to the denials of admission of Plaintiff to the Program in 2012 and 2013 and the Faculty Member's direct or indirect involvement therein, despite notice of Plaintiff's repeated claims with respect thereto, breaching a duty owed to Plaintiff.

129.    As a direct and proximate cause thereof, Plaintiff suffered economic and non-economic damages, including emotional distress and psychological damage, and her character and standing in her community have suffered, and an injunction is required to prevent further unlawful destruction of the same.

**WHEREFORE**, Plaintiff respectfully requests judgment in her favor and against Defendants as follows:

A.      Compensatory damages for Plaintiff's economic and non-economic damages, including psychological and emotional distress and damages, loss of standing, damage to her reputation, and unreimbursed out of pocket expenses incurred in response to these circumstances;

B.      Punitive damages;

C.      Injunctive relief prohibiting Defendants from further disclosure of her confidential educational records and other private information;

D.      Injunctive relief requiring Defendants to preserve and not unlawfully destroy all remaining records related or relevant to Plaintiff's complaints about the Faculty Member and the other matters asserted herein;

E.      Injunctive relief requiring UCD to appropriately staff, supervise and train its Title IX Office and Responsible Employees with respect to their obligations under Title IX and UCD's written polices;

F.      Statutory interest;

G.      Costs; and

H.      Reasonable attorneys' fees.

## JURY DEMAND

Plaintiff demands a trial by jury.

    s/Regina T. Drexler/

Regina T. Drexler, Pro Se

1430 Larimer Street
Suite 307
Denver, Colorado 80202
303.222.4254
